UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                      Case No.: 2:15-cr-49-FtM-38CM

MILTON L. JOHNSON
_____

# **ORDER**[1]

This matter comes before the Court on Defendant Milton L. Johnson's Motion to Suppress (Doc. #21) filed on July 16, 2015.  The Government filed a Response to Motion to Suppress Evidence (Doc. #24) on July 31, 2015.  A hearing was held before the undersigned on September 10, 2015.  (Doc. #33).  Defendant was present and represented by Russell K. Rosenthal, Assistant Federal Public Defender.  The Government was represented by Jeffrey Michelland, Assistant United States Attorney. The Government called three witnesses: Debra Chaney, Officer Justin Trask of the Fort Myers Police Department ("FMPD"), and Sergeant Eric Gutridge of the FMPD and introduced ten exhibits (Doc. #40).  Defendant called one witness, Natasha Shaneyfelt, and introduced two exhibits (Doc. #39).  The issues raised in Defendant's Motion to Suppress are now ripe for review.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## BACKGROUND[2]

On April 11, 2015, at 12:15 a.m., Debra Chaney called 911 to report that an unidentified black male walked into her sister's apartment at 3866 Washington Avenue in Fort Myers, Florida with a firearm.  The apartment complex at 3866 Washington Avenue is a single, multi-unit building with a small number of apartments on the ground floor, and a common parking lot.  *See* Def. Exs. A-B.  Ms. Chaney told the 911 operator that she had three children with her and that she was in the "last apartment" in the complex.  Ms. Chaney also reported that the man had a gold colored car.  This 911 call was disconnected at 12:17 a.m., but Ms. Chaney called back three minutes later and spoke to a different operator.  During the second call, Ms. Chaney said that she could hear knocking at the front door of her sister's apartment, but that she would stay on the phone with the 911 operator.  After approximately fifty-three seconds, the second 911 call was disconnected.

Sergeant Eric Gutridge, Officer Justin Trask, and Officer Kassandra Gonzalez of the FMPD responded within six minutes of Ms. Chaney's first call.  Sergeant Gutridge testified that he responded because any time there is a potentially high-risk call or a call involving a firearm that requires one of his patrol officers to respond that he, as shift supervisor, also responds.  Officer Trask arrived first and parked his patrol car under a tree east of the apartment complex.  *See* Gov't Ex. 1.  Sergeant Gutridge arrived next and parked to the west of the apartment complex.  *See* Gov't Exs. 1 & 2.

With their firearms drawn and in their police uniforms, Officer Trask and Sergeant Gutridge approached the apartment complex on foot at the same speed but from opposite

---

[2] The Court derives the facts from the testimony and exhibits presented at the evidentiary hearing.  The facts are undisputed unless otherwise noted.

2

directions (east and west).  They saw Defendant, a black male, in the common parking lot standing next to a 1998 gold Regal Buick bearing Florida license plate number F035XB.  *See* Gov't Ex. 3.  Defendant stood between the open driver's side door and the driver's seat with the front of his body facing into the car.  Other than Ms. Chaney's red Toyota, the gold Buick was the only vehicle in the parking lot, and there were no other individuals in the area or around the vehicle.

Sergeant Gutridge stood approximately five to ten feet from the hood of Defendant's car on the passenger side when he identified himself as a law enforcement officer and told Defendant to show his hands.  Sergeant Gutridge testified that he and Defendant made eye contact.  Defendant did not comply with Sergeant Gutridge's command.  Instead, he turned around, at which point he faced Officer Trask, and Officer Trask identified Defendant to be holding a semi-automatic handgun.  *See* Gov't Exs. 4 & 5. Defendant then dropped the gun and fled with the vehicle door remaining open.

Sergeant Gutridge and Officer Gonzalez pursued Defendant on foot.  Officer Trask remained with the firearm.  During the chase, Sergeant Gutridge testified that he gave loud verbal commands for Defendant to stop.  Sergeant Gutridge and Officer Gonzalez apprehended Defendant about one block south of Washington Avenue without further incident.  Once Defendant was handcuffed, Sergeant Gutridge could hear Officer Trask over the radio confirming that Defendant had dropped a firearm.  Approximately three to four minutes elapsed between when the Officers arrived on scene until Defendant was arrested.

Sergeant Gutridge and Officer Gonzalez then placed Defendant in Officer Gonzalez's patrol car, which she moved to the entrance of the parking lot.  Officer

3

Gonzalez checked Defendant's criminal history through the FMPD Dispatch, which revealed Defendant to be a convicted felon. Around this same time, Sergeant Gutridge spoke with Ms. Chaney who described the firearm that Defendant was carrying.

Thereafter, Officer Gonzalez and Sergeant Gutridge conducted an inventory search of the gold Buick and found the following items:

- a black bag on the front passenger's seat floorboard containing a clear plastic bag with nine individually packaged plastic bags with suspect heroin weighing approximately 3.3 grams;
- a clear plastic bag containing suspect marijuana in the front center console;
- a debit card issued to Defendant under the clear plastic bag containing suspect marijuana; and
- $49.00 in U.S. Currency.

Officer Gonzalez conducted presumptive field tests of the recovered substances, which tested positive for heroin and marijuana. No paraphernalia consistent with heroin use was found. The above-listed items were taken into evidence and submitted to the FMPD's evidence vault. A third-party towing company then towed the vehicle.

As a result of the above, Defendant was charged with resisting an officer without violence to his person in violation of Florida Statute § 843.02; possession of a firearm by a convicted felon in violation of Florida Statute §§ 790.23(1)(A), 893.13(1)(A)(1); possession of marijuana under 20 grams in violation of Florida Statute § 893.13(6)(B); and carrying a prohibited weapon in violation Florida Statute § 790.053. On April 29, 2015, a federal grand jury indicted Defendant for possession of heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. #1 at 1-2).

Defendant now moves to suppress all evidence seized from his person, as well as the results of the vehicle search. (Doc. #21 at 9). He argues that (1) there was no reasonable suspicion justifying Defendant's initial detention; (2) there was no probable cause to arrest Defendant; (3) the officer failed to limit Defendant's detention to the permissible scope of an investigative detention; (4) the search of Defendant's person was unlawful because there was no probable cause to arrest him; and (5) the search of the vehicle was unsupported by any recognized exception to the Fourth Amendment prohibition against warrantless searches. (Doc. #21 at 2).

Against the above backdrop, the Court will address Defendant's Motion to Suppress in turn.

## DISCUSSION

### A. The Investigative Stop and Defendant's Subsequent Arrest were Lawful

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures[.]" U.S. Const. amend. IV. Evidence seized in violation of the Fourth Amendment must be suppressed. See *Terry v. Ohio,* 392 U.S. 1, 12 (1968); *United States v. Gilbert,* 942 F.2d 1537, 1541 (11th Cir. 1991). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967) (footnotes omitted). Among the limited exceptions to the rule against warrantless searches and seizures are investigatory stops. See *Illinois v. Wardlow,* 528 U.S. 119, 675 (2000) (citing *Terry,* 392 U.S. at 30).

5

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Wardlow*, 528 U.S. at 675 (citing *Terry,* 392 U.S. at 30); *see also United States v. Franklin,* 323 F.3d 1298, 1301 (11th Cir. 2003). "[I]n evaluating the constitutionality of an investigatory stop, the court must examine 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Powell,* 222 F.3d 913, 917 (2000) (quoting *Terry,* 392 U.S. at 27)).

"[R]easonable suspicion is a less demanding standard than probable cause and requires as showing considerably less than preponderance of the evidence." *Wardlow,* 528 U.S. at 123. But it must be more than an "inchoate and unparticularized suspicion or hunch." *Terry,* 392 U.S. at 27. "The officer must have 'some minimal level of objective justification' taken from the totality of the circumstances." *Powell,* 222 F.3d at 917 (quoting *United States v. Sokolow,* 490 U.S. 1, 7-8 (1989)). Reasonable suspicion "does not require officers to catch the suspect in a crime. Instead, [a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Acosta,* 363 F.3d 1141, 1145 (11th Cir. 2004) (citations omitted); *see also United States v. Lee,* 68 F.3d 1267, 1271 (11th Cir. 1995) ("None of the suspect's actions need be criminal on their face, yet taken together, they can provide trained police with reasonable suspicion.").

Here, the Officers' initial stop of Defendant was constitutionally permissible, as objective reasonable suspicion that Defendant was involved in criminal activity was patent and abundant. Within minutes of receiving the report, the Officers arrived at the

apartment complex and saw a black male standing next to a gold-colored vehicle, facts that corroborated the 911 call.  *See United States v. Sanders*, 394 F. App'x 547, 549 (11th Cir. 2010) (finding reasonable suspicion for an investigatory stop where a police officer responded to a call about a possible emergency situation and independently corroborated information from the call); *United States v. Aldridge*, 719 F.2d 368, 371 (11th Cir. 1983) (stating that corroboration of details from an informant's tip can give rise to a reasonable suspicion that criminal activity may be afoot, even if the tip is anonymous).  Also, the Officers were at the correct address, they saw no other persons in the parking lot, in the roadway, or anywhere in the neighborhood, and it was after 12:00 a.m. in the morning.

To the extent Defendant challenges the reasonableness of the Officers approaching him with their guns drawn, the Court comments that an investigatory stop does not necessarily become an arrest merely because an officer displays his weapon, particularly when the officer may act reasonably in being prepared for possible violence. *See United States v. Ochoa*, 402 F. App'x 478, 483 (11th Cir. 2010) (finding "the officers acted reasonably in drawing their guns during the initial approach, and their decision to do so did not convert the approach into an arrest" (citing *United States v. Roper,* 702 F.2d 984, 987-88 (11th Cir. 1983)).  Here, the Officers responded to a report about an armed intruder late at night, and they understood from the dispatcher that the intruder was still on the property.  On arriving to the apartment complex, they observed Defendant with something in his hand and standing within reach of an open vehicle that may have contained a firearm.  As the Officers were responding to a potential armed home invasion, they were reasonable in having concerns for their personal safety and were reasonable in being prepared to address any threat or person with a firearm.   Given said

7

circumstances, it was necessary for the Officers to weigh their own interests to protect themselves against Defendant's interests.  It was, therefore, reasonable for the Officers to attempt a *Terry* stop to neutralize the potential threat of physical harm and to approach Defendant with their firearms drawn.

Defendant argues that his presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that criminal activity was afoot.  His argument is unpersuasive because, even absent the address of the apartment complex, there were other factors to give the Officers reasonable suspicion – Defendant matched Ms. Chaney's description of the armed intruder, he was standing next to a vehicle that matched the color description, and he was the only person in the parking lot.[3]  All the same, the Supreme Court has stated that "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Wardlow,* 528 U.S. at 124; *see also United States v. Gordon,* 231 F.3d 750, 755-56 (11th Cir. 2010) (noting an area's reputation for criminal activity is a factor that may be considered when determining whether reasonable suspicion exists).

Although Defendant's decision to flee does not *per se* give reasonable suspicion, the Officers had reasonable suspicion as they approached him and before he fled.  In fact, the Officers' reasonable suspicion that Defendant was involved in a criminal activity coupled with his effort to flee and dropping a firearm, established probable cause to arrest him.  *See United States v. Lindsey,* 482 F.3d 1285, 1291 (11th Cir. 2007) (stating an arrest must be supported by probable cause, which requires a reasonable belief under

---

[3] The small parking area contained two vehicles, the vehicle belonging to Ms. Chaney, and a gold in color Buick.

8

the totality of the circumstances, that the suspect had committed or was committing a crime).  In addition, the Officers acted within their right to seize the firearm that Defendant dropped in the parking lot.  See *United States v. Knight,* 336 F. App'x 900, 903 (11th Cir. 2009) ("When individuals abandon contraband during a chase with law enforcement, they have no expectation of privacy to challenge seizure of the property." (citing *California v. Hodari D.,* 499 U.S. 621 629 (1991) (holding that an individual is not seized while fleeing police, so items discarded or abandoned during the chase are not evidence susceptible to exclusion)); *see also* *United States v. Franklin,* 323 F.3d 1298 (11th Cir. 2003) ("While flight is not proof of wrongdoing, it is indicative of such.  Innocent persons might run from police officers; but flight creates an ambiguity; and the officers may stop the person to resolve the ambiguity.").

Accordingly, the Court finds that the Officers' initial stop of Defendant was reasonable under the circumstances, and that probable cause supported his subsequent arrest.[4]

## B.  Search Incident to Defendant's Arrest was Lawful

Next, Defendant challenges the search of his person and vehicle after his arrest.  (Doc. #21 at 7).  It is well-settled that a search incident to a lawful arrest is a traditional exception to the Fourth Amendment's warrant requirement.  See *Arizona v. Gant,* 556 U.S. 332, 338 (2009); *United States v. Smith,* 481 F. App'x 540, 543 (11th Cir. 2012).

---

[4] Debra Chaney testified that she had never seen or had contact with Defendant prior to April 11, 2015. However, Ms. Chaney's sister, Natasha Shaneyfelt, testified that Ms. Chaney had met Defendant before the night in question.  Although the sisters offered conflicting testimony, the Court need not make a credibility determination as to whether Ms. Chaney was truthful in testifying that she had never met Defendant before April 11, 2015, because such testimony is irrelevant at this stage of the proceedings. Based on the circumstances in this case, the Court need only determine whether the Officers had reasonable suspicion and/or probable cause to arrest Defendant, and the information the Officers received from the FMPD dispatcher formed the basis for their reasonable suspicion and probable cause.

Once a suspect is under lawful arrest, police officers may also search areas within the immediate control of the suspect to prevent him from obtaining a weapon or destroying evidence. See *Chimel v. California,* 395 U.S. 752, 762-63 (1969). The search incident to arrest "exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant,* 556 U.S. at 339. Because automobiles present a unique situation, an officer may also search a vehicle incident to a recent occupant's arrest if "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant,* 556 U.S. at 350.

Here, the search was incident to the arrest and the Officers did not exceed the scope of a permissible search. The offense of arrest – Defendant being a convicted felon in possession of a firearm – supplied a basis for searching the passenger compartment of his vehicle and any containers therein. It was reasonable for the Officers to believe that evidence relevant to this crime may be in the vehicle, including other firearms and/or ammunition. The Officers, therefore, were justified in searching the vehicle's passenger compartment and the containers therein.

**C. Inventory Search**

Finally, Defendant argues that Officer Gonzalez and Sergeant Gutridge did not conduct a valid inventory search because it was based on an unlawful arrest. (Doc. #21 at 8-9). Defendant continues that the Government bears the burden to establish that the search was conducted per a nearly mechanical application of a standard policy and was not a search of evidence. (Doc. #21).

An inventory search of a vehicle is a well-recognized exception to the general rule that a warrantless search is *per se* unreasonable. See *Colorado v. Bertine,* 479 U.S. 367,

371-72 (1987). Under this exception, a search conducted pursuant to an inventory is lawful if the police "first have the authority to impound the vehicle," and then perform the inventory search "pursuant to explicit and comprehensive procedures." *United States v. Williams,* 936 F.2d 1243, 1248 (11th Cir. 1991). Inventory searches serve three distinct needs: (1) protect the owner's property while it remains in police custody; (2) protect the police against claims or disputes over lost or stolen property; and (3) protect the police from potential danger. See *South Dakota v. Opperman,* 428 U.S. 364, 369 (1976); *United States v. Crisp,* 542 F. Supp. 2d 1267, 1289 (M.D. Fla. 2008).

An "inventory search must not be a ruse for a general rummaging in order to discovery incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory."" *Wells,* 495 U.S. at 4. Regarding opening containers found inside a vehicle during an inventory search, the Supreme Court has held that:

> [a] police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.

*Wells,* 495 U.S. at 4.

It is the FMPD's policy to tow and inventory all vehicles in which the driver has been lawfully arrested. *See* Gov't Ex. 7 at § VIII(H)(1). This policy is reflected in Fort Myers Policy Department General Order 24.6, which authorizes an officer to have a tow company remove any vehicle "[w]hen an arrest is made of the person operating the vehicle." Gov't Ex. 7 at § III(A)(1). "Whenever possible, search of a motor vehicle, and

11

of containers found therein should be conducted at the location where the vehicle was discovered or detained." See Gov't Ex. 7 at § VIII(D). Officers are directed to inventory a vehicle when "[t]he driver . . . has been lawfully placed under custodial arrest for any violation of Florida State Statutes, Federal Laws, or City Ordinances, and the vehicle in which the arrestee was occupying is going to be towed from, . . . the location where the arrest occurred." Gov't Ex. 7 at § VIII(I)(1). The officer performing the inventory must, among other things, "open any closed containers, to include hidden compartments, briefcases, luggage, bags, boxes, or any encasements located in the vehicle where property can be stored." Gov't Ex. 7 at § VIII(I)(7)(d). The officer must collect any evidence discovered during the vehicle search and store it in accordance with FMPD's applicable policies. See Gov't Ex. 7 at § VIII(G).

Here, even if the search did not fall under the search incident to arrest exception above, the Court finds the inventory search was conducted lawfully and in compliance with the FMPD protocol. Subsequent to Defendant's lawful arrest, the contents of the vehicle he had been standing next to at the time of the stop were inventoried, and the car towed. Sergeant Gutridge photographed the exterior and interior of Defendant's vehicle and the black nylon bag found in the passenger compartment. See Gov't Exs. 3, 8-9. The items Officer Gonzalez recovered from the vehicle, including the drug evidence in controversy were submitted into the FMPD's evidence vault. See Gov't Ex. 11; *see also* [United States v. Carter, No. 2:10-CR-95-FTM-36SPC, 2011 WL 1335861, at \*7 (M.D. Fla. Mar. 10, 2011)](), *report and recommendation adopted*, [2:10-CR-95-FTM-36SPC, 2011 WL 1335852 (M.D. Fla. 2011)](). The Court, therefore, finds that the inventory search of

Defendant's vehicle did not violate the Fourth Amendment and the evidence found inside should not be suppressed.

In conclusion, the Court finds no error in Defendant's arrest and the subsequent search of his vehicle, and therefore denies Defendant's Motion to Suppress.

Accordingly, it is now

**ORDERED:**

Defendant Milton L. Johnson's Motion to Suppress (Doc. #21) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this September 16, 2015.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record